May it please the Court, Sharon Zohar of Kirkland & Ellis, on behalf of Appellant Winifred Jiau, I ask to reserve five minutes of my time for rebuttal. All right. Ms. Jiau asked this Court to revert the dismissal of her Bivens action and remand the case back to the District Court because it was prematurely and erroneously dismissed. Ms. Jiau's Bivens action was dismissed sua sponte at the pleading stage without giving Ms. Jiau an opportunity to amend her complaint and without giving her an opportunity to be heard. First, the District Court dismissed Jiau's Bivens complaint on the basis of Skinner v. Switzer, which holds that action that would necessarily spell immediate release must be brought in a habeas petition. But success in Jiau's action would not have necessarily resulted in early release. The Court misapplied Skinner to the facts of this case. Second, the government has asserted that Ms. Jiau's Bivens action is heck-barred because a win would necessarily invalidate the Bureau of Prisons' decision to expel her from RDAC. But as the Supreme Court clarified in Muhammad v. Close and later reaffirmed in Wilkinson v. Dodson, a civil rights action is not heck-barred, as long as it would not invalidate either the underlying conviction or the underlying sentence. And here's the question. But if it affects the duration of the sentence, doesn't that come within the heck parameters? Yes, Your Honor. If the challenge would affect the duration of the sentence, then it would be heck-barred. But here, Ms. Jiau's challenge would not necessarily invalidate the duration of her confinement. And accordingly, it's not heck-barred. Does Heck say that it necessarily has to? Heck says that it must invalidate the underlying conviction or the duration of the sentence. It has to be – it has to invalidate either of those. And here it does not. In any event, according to this Court's own precedent in the Net v. Small, Ms. Jiau's civil rights action is proper because she has no other form of relief available. Could I ask you – I'm sorry. Could I ask you about the heck question? I thought the Supreme Court said in Muhammad v. Close that if success would implicitly question the direction of her sentence, it's heck-barred. Do you – do you take issue with the fact that her claim would implicitly question the duration of her sentence? No, I wouldn't take question with the fact that it would implicitly question the duration of her sentence. But it would – but according to the Supreme Court's clarification following Muhammad v. Close and, you know, in Wilkinson v. Dotson and later and later precedent of this Ninth Circuit, the only times where the heck-bar has been used to invalidate an administrative decision that doesn't relate to the underlying confinement is when the relief that was sought by the Petitioner would have shortened – would have been an automatic shortening of the confinement. For example, in Edwards v. Balasoff, which is cited by the government, the Court there used the heck-bar to invalidate an administrative decision unrelated to the underlying conviction, but that was because Petitioner sought reinstatement of good time credits, meaning an automatic shortening of the confinement. Here, Ms. Zhao doesn't ask for anything that would have automatically shortened her confinement. And according to the Court's precedent in the Net v. Small, we don't even need to reach any of these issues, because Ms. Zhao's civil rights action is proper because she has no other form of relief available to her at this point. Finally, there are no alternative grounds to warrant dismissal of this case. Zhao's properly asserted right – excuse me – retaliation for her exercise of her criminal appeal and a valid Fifth Amendment claim, because although the Bureau of Prisons – Bureau of Prisons officials do have discretion under ARDAP, they don't have the authority to retaliate against prisoners for exercising their constitutional and Federal rights. Your Honors, while the line between civil rights actions and habeas claims are often murky, the rule enumerated in Skinner that a Bivens action is proper where it doesn't necessarily spell earlier release has been the law pre-Skinner and is the law today. And the government does not dispute this reading of the case law. Instead, the government's asserting that the district court could have read Ms. Zhao's complaint as seeking immediate release. Well, I guess my – it just seems remarkable that we're here because the prison system offered her – I mean, offered her a program to help her, this ARDAP program. It's not requirement. There's nothing obligatory for the detention people in the prison system to offer this. They do this on a voluntary basis. And I guess that I – this is tied to her constitutionality claim because there's no – I mean, because this isn't purely – you're not challenging purely the discretion, but it just seems – causes me some concern that no good deed goes unpunished. Yes. Well, Your Honor, in 1997, this Court in Vignolo v. Miller said that a court can't condition even a discretionary permit or a discretionary program or discretionary right on a prisoner's waiver of their constitutional or Federal rights. So it is a type of claim that this Court has recognized in the past. And although the program – But what about those programs? I mean, people have to – they have to – for them to be able to go forward, they have different issues and different things, except for responsibility. So, I mean, I guess the rule that we'd be setting here, and I guess this is what, you know, causes me pause, is that prison officials, if anybody's appealing their case, don't offer them any help in the form of RDAP. Isn't that what we'd be saying? And that would eliminate a population that I think would – I mean, the result would be unfortunate. Or is the reverse true, that anyone that is convicted after trial but still sustains that they're innocent and is not able to participate in any of these programs because they would be required to admit that they committed the act even though their case is on appeal? No, Your Honor. I don't think either of those would be the case. First, to get to Judge Murguia's point, the Reeve case decided by this Court has already created an avenue for prisoners to seek relief for vindication of their constitutional rights. So that sort of exception or avenue has already been created for judicial review of such claims. And to Judge Navarro's point, I don't think that that is the case at all in terms of requiring a prisoner to give up their appeal. In this case, neither the statute, the program statement, or any of the regulations require a participant to admit that they committed the exact crime for which they were convicted. Indeed, Ms. Zhao was attending ARDAP, which for her alcohol abuse, she was asked by the counselor in ARDAP to admit that she was, quote, the cause of the bad U.S. economy, that she caused hedge funds to profit billions, query what the penological interest is for having Ms. Zhao admit to these claims that are clearly unrelated to the alcohol abuse treatment that she was receiving. This is unlike the situation in McCune, for example, which is cited by the government, where the program statement there, which was tied to empirical evidence, showed that sex offenders, it was important for sex offenders to admit the criminality of their sex offense in order to receive the benefits of the sex abuse treatment program. Here, no such situation exists. Wasn't she being asked to admit what how her alcohol addiction contributed to her committing the crime, and that's why she was saying she didn't want to talk about her crime, because she had been told by her appellate attorney not to talk about the conduct underlying the conviction, and so she couldn't contribute and communicate during that group session. No, Your Honor, from my reading of the record, and the record is very sparse again, because this case was dismissed sua sponte at the pleading stage without giving Ms. Zhao an opportunity to develop the record, but from what the record reflects, Ms. Zhao was, you know, sort of aggressively attacked by a counselor and asked, hey, admit that, aren't you the reason that the U.S. economy is suffering? Aren't you the reason that hedge funds, didn't you force or help, excuse me, hedge funds profit billions? That was the exact crime for which she was convicted, assisting with insider trading associated with hedge funds, and that crime was still undergoing an appeal at the time in the Second Circuit. So it doesn't appear that there's any relationship, as long as my reading of the record, between her admitting her criminal behavior to her receiving treatment for her alcohol problem. So what constitutional right is she claiming was violated? Ms. Zhao, among others, claims that she – that her Fifth Amendment right against self-incrimination was violated. She was retaliated for that. And her right to a criminal appeal was again violated, because when she asserted it, she was retaliated by being kicked out of the program. Up to the point when she asserted those rights, there's no indication that Ms. Zhao was not properly participating in the program, completing all of the program requirements, and was otherwise an active and proper participant. There's no further questions. I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, counsel. Thank you.  Good morning. May it please the Court. My name is Dennis Wong, on behalf of the appellees. Your Honor, Judge Ossoff was absolutely correct when he dismissed Ms. Zhao's grievance complaint, as it affected the duration of confinement based on Skinner and his progeny. Skinner and his progeny, namely Heck and Balistock, provided for an absolute bar to any civil rights lawsuit that affected duration of confinement, unless, first, the underlying decision is invalidated through habeas. Ms. Zhao filed a habeas, challenging her expulsion from the Bureau of Prisons Residential Drug Abuse Treatment Program, otherwise known as the RDAP. She alleged in her habeas that it adversely affected her duration of confinement because it cost her her early release eligibility benefit of up to a year. While her habeas petition was still pending, she took the same, largely the same allegations and the supporting documentation and filed a Bivens lawsuit, the one we're talking about today. When Judge Ossoff reviewed Ms. Zhao's Bivens complaint, he saw that the Bivens complaint was essentially the same as the habeas petition, saw that fellow judge, Judge Elston, had dismissed the habeas petition for failure to exhaust. So Judge Ossoff was absolutely correct when he saw that the issues raised by Ms. Zhao belonged in the habeas and was dealt with by Judge Elston. And he was absolutely correct to apply the absolute Heck-Balistock bar in dismissing her complaint. Could he also have used race judicata? Yes, Your Honor. I think the Prazer v. Rodriguez case says that in a habeas proceeding, the judge does have preclusive effect to a subsequent civil rights case. So that could also be something that he could have done. But Judge Ossoff, I think, saw the bright line articulated in the Heck-Balistock case that said you have to file a habeas first and have it dealt with there before you can file a 1983 action. And that's to avoid the collateral attack of a decision affecting duration of confinement. And that's why Heck-Balistock and the Skinner and the Dotson cases all articulate that principle. And that's all Judge Ossoff did here. That's why he was correct. And that's why we asked this Court to affirm his decision. Well, but Skinner, I think, and Dotson both say that it has to necessarily include a speedier release. Reduction in sentence? Or a reduction in sentence. So that didn't happen here. The RDAP program didn't necessarily affect a speedier release or reduction in sentence, because that was going to be discretionary to the Bureau of Prisons. So how do we address that? I think it would have, Your Honor, in terms of effect and duration. What is at stake here is really here's full shape. Well, the fact that you think it would have, I mean, it has to necessarily affect it. And I think it meets that standard, if I may explain. The early release eligibility criteria, or the early eligibility for early release, under Court v. Crabtree, this Court had held that there were settled expectations for early release. Once you're notified, you're eligible. We can infer that Ms. Jowell was notified of this because she talks about having lost it. So that settled expectations is what makes this similar to a disciplinary case where you are losing good conduct time. Judge Ossoff, I believe, saw that if he had dealt with the allegations of expulsion and undid the expulsion, then the Bureau of Prisons, he would have to potentially also reinstate her, and she would get her early release eligibility back. Under Court v. Crabtree, it talks about how the only condition left once the Bureau of Prisons gives early release eligibility is controlled by the participant. That is, if you successfully complete it, you've got it. In Court v. Crabtree, the Bureau of Prisons tried to take, change the eligibility by changing early release criteria. And that's when the Ninth Circuit said, no, once you're notified of early release eligibility, you get to keep it, subject to you, of course, completing it. I cited in a 28J letter last week an additional case, Bowen v. Hood, that sort of elaborates further on the settled expectations doctrine. Bowen v. Hood, the Bureau of Prisons tried to attach the word provisional to a notice of early release eligibility so that they could try to change their eligibility criteria at that point. And the Ninth Circuit said, no, they couldn't. The Bureau of Prisons couldn't take away what it's left, what it gave with its right. The doctrine is what is significant to how that invalidation of the expulsion would have necessarily given her a speedy release subject to her own control. I don't know if that addresses the Court's concerns about the discretionary nature of the early release, because it's not discretionary enough to avoid the heck balisong bar. So you're saying that the Bureau of Prisons does not have the discretion to deny her early release even if she finishes the RDAP program. And I realize this is all in the past because she's out of custody, but you're saying that even if she had completed the RDAP program, the Bureau of Prisons would not have discretion. She would have received a reduced sentence, and that's why the heck bar applies. That's correct, Your Honor. And that's what Court and Bowen discussed. Bowen, and what was the other one? Court v. Crabtree, C.O.R.T., and Bowen v. Hood, cited in supplemental authorities in a 28J letter that I submitted last week. Ms. Jowett had the option, Your Honor, in her habeas petition, to address these constitutional issues. That was the right place for her. And all she had to do was follow Judge Ilson's order to exhaust her measure of remedies, and she could then refile a new habeas and have all the constitutional issues that she raised, including the Fifth Amendment claim, in the habeas proceeding. But she chose not to. And Ms. Jowett's avenue for habeas is not foreclosed. She can still go down that route. That's why Judge Ossoff's order was so correct, in that he applied the bar knowing that that's the direction she had to follow. Unless the Court has any questions or has any concerns, we made the alternative argument for the Court to consider that even as a matter of law, there is no Fifth Amendment privilege. I think that that goes directly to the points that Judge Murgia and Judge Navarro pointed out, that the inherent problem with this case is that if you were to hold there's a Fifth Amendment privilege of any sort in the RADAP context, that how is that going to affect the RADAP? But separate from that, Your Honor, there just simply isn't a Fifth Amendment privilege under the McCune Supreme Court test or under any of the cases that Ms. Jowett cited. They simply do not support that there's a Fifth Amendment privilege. I would point to the distinguishing feature of the RADAP that Judge Murgia had alluded to, which is that the RADAP is voluntary. You don't have to participate. But if you do choose to participate, you have to participate to the fullest so you can finish up and earn your early release eligibility. Not every inmate who goes into the RADAP or accepted into the RADAP gets early release eligibility. Yet inmates routinely follow through with the treatment and programming and end up with drug treatment or alcohol abuse treatment. Unless the Court has any further questions or concerns.  Thank you, Counsel. Thank you, Your Honor. Roberts. First, the government contends that you have to first file a habeas petition in order to then be able to be eligible to file a 1983 petition. This is incorrect. The issue in Skinner was whether a prisoner may bring a 1983 action. And the Court determined that he may, that a 1983 action was available so long as it didn't spell immediate release and unless success would imply the invalidity of the underlying conviction or the underlying sentence. If success would imply. That's correct. So you don't think in this case a successful action would necessarily affect the duration of the sentence? No, Your Honor. Ms. Zhao in her Bivens action sought placement in a residential reentry center and damages, neither of which would have affected the duration of her confinement. It wouldn't have necessarily implied that the length of her sentence was somehow invalid. And in any event, at this point, all Ms. Zhao has remaining is damages, which clearly don't go to the length of her confinement. But we have to look at the action as filed, don't we? Well, Your Honor, in the action as found, we do still think that a Bivens action is proper because the relief that she sought in her complaint wouldn't have necessarily implied the invalidity of her sentence, because, again, she was seeking for a change in her condition of confinement and damages. And even if read, her complaint is read to seek reinstatement into the residential drug abuse program. As the statute itself says, the BOP retains ultimate discretion whether the prisoner will ultimately be released early. And as further elaborated by McLean v. Crabtree, the Ninth Circuit decision, the BOP has broad discretion even once the prisoner completes the program. Well, what about opposing counsel's representation that once the requirements are completed, it's virtually automatic that the sentence is lessened? Your Honor, the cases that the government cites for this proposition, Court v. Crabtree and later Bowen v. Hood, which is a 20-year-old case just recently submitted as supplemental authorities, in both of those cases, the Court says that the sort of settled expectation that the prisoner has is in the consideration for early release. There's no case or statute or anything that the government can point to that it becomes automatic. What's your response to opposing counsel's observation that the most telling evidence that this is truly a case that should have been pursued in habeas is the fact that habeas relief was sought initially? Your Honor, this is a complicated area of law. Ms. Zhao is a pro se litigant. She was attempting to vindicate her rights and find an opportunity to change placement into the residential reentry center and seek damages. So to the extent that she brought a habeas action when she should have brought a Bivens action, we don't believe that that's something that she should be prevented from bringing, though. Well, but the district court did not dismiss it on the basis that habeas was the improper basis for seeking relief. The district court did not dismiss the habeas petition for that, no. And there is significant overlap between when a plaintiff can bring certain claims under habeas and under 1983. 1983 action is still proper, even if the habeas action is proper, so long as, again, it's not heck barred. And I will clarify the opposing counsel reference that res judicata might also apply. The district court decision dismissing Ms. Zhao's habeas petition was without prejudice. Res judicata only attaches to prejudicial decisions. And in any event, this wasn't at all briefed or presented before. I'd like to also say that Governor – excuse me, Governor – the government tries to assert that as a matter of law, Ms. Zhao is prevented or foreclosed from bringing this type of claim. But McCune does not say that as a matter of law, a prisoner is precluded from bringing a Fifth Amendment retaliation claim for refusing to incriminate oneself. In actuality, it says that it's a fact-intensive inquiry where you need to weigh the penological interests against the penalties imposed. And this circuit in Antelope and Barr and Strodero has accepted these types of claims, has found these types of claims to be actionable violations, claims of Fifth Amendment incrimination, sort of retaliation claims within the rehabilitation program context. And I have just a few seconds remaining, and I'd like to leave you with Minnette v. Small, which, again, is precedent of this Court, that regardless if you agree with the government that the heck Barr somehow barred Ms. Zhao's claims, currently because she has no other form of relief available because she is on supervised release and damages is all she has remaining available, a 1983 action or a Bivens action must be proper.  Thank you, counsel. Thank you. Thank you to both counsel. And, again, we thank Ms. Zohar for her participation in the pro bono project. This completes our calendar for today. We are in recess until 9.30 a.m. tomorrow morning. ??
judges: Navarro, Rawlinson, Murguia